1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRYANT KEITH BROWN,

11              Plaintiff,                    No. CIV S-10-0479 MCE EFB P

12         vs.

13   D. BRASHER,

14              Defendant.              FINDINGS AND RECOMMENDATIONS

15   _____/

16         Plaintiff is a state prisoner proceeding without counsel in a civil rights action brought

17   under 42 U.S.C. § 1983.  He proceeds on an Eighth Amendment claim that defendant Brasher

18   was aware that a wet floor at High Desert State Prison posed an excessive risk of harm to

19   plaintiff, who is mobility impaired, yet failed to take reasonable measures to abate that risk.

20   Defendant moves for summary judgment on the following grounds: (1) that plaintiff cannot

21   establish a constitutional violation under the undisputed facts; (2) that defendant is entitled to

22   qualified immunity for the alleged constitutional violation; and (3) that plaintiff failed to

23   properly exhaust his administrative remedies prior to filing suit.[1]  For the following reasons,

24   defendant's motion must be granted.

25   _____

26         [1] Also pending is plaintiff's motion for a pretrial conference.  Dckt. No. 23.

1

1  **I.      Summary Judgment Standards**

2          Summary judgment is appropriate when there is "no genuine dispute as to any material

3  fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary

4  judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

5  to the determination of the issues in the case, or in which there is insufficient evidence for a jury

6  to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

7  (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

8  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

9  motion asks whether the evidence presents a sufficient disagreement to require submission to a

10 jury.

11         The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

12 or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

13 "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

14 trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on

15 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the

16 initial responsibility of presenting the basis for its motion and identifying those portions of the

17 record, together with affidavits, if any, that it believes demonstrate the absence of a genuine

18 issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th

19 Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the

20 burden then shifts to the opposing party to present specific facts that show there is a genuine

21 issue for trial.  Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67

22 F.3d 816, 819 (9th Cir. 1995).

23         A clear focus on where the burden of proof lies as to the factual issue in question is

24 crucial to summary judgment procedures.  Depending on which party bears that burden, the party

25 seeking summary judgment does not necessarily need to submit any evidence of its own.  When

26 the opposing party would have the burden of proof on a dispositive issue at trial, the moving

party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

   To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law.  *Id*.  If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322.

   Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual

1  claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

2  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

3  or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

4  for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

5  demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

6  that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

7  477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

8       The court does not determine witness credibility.  It believes the opposing party's

9  evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

10  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

11  proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

12  *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

13  dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

14  at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

15  (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational

16  trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

17  475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

18       Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

19  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

20  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

21  'genuine issue for trial.'"  *Id.*  If the evidence presented and any reasonable inferences that might

22  be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

23  issue.  *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine

24  dispute over an issue that is determinative of the outcome of the case.

25  ////

26  ////

4

1    On May 11, 2010, the court advised plaintiff of the requirements for opposing a

2    motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154

3    F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v.*

4    *Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

5    **II.    Eighth Amendment Standards**

6    A prison official violates the Eighth Amendment's proscription of cruel and unusual

7    punishment where he or she deprives a prisoner of the minimal civilized measure of life's

8    necessities with a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 834

9    (1994).  To succeed on such an Eighth Amendment claim, a prisoner must show that (1) the

10   defendant prison official's conduct deprived him or her of the minimal civilized measure of life's

11   necessities and (2) that the defendant acted with deliberate indifference to the prisoner's health

12   or safety.  *Id.* at 834.  To show deliberate indifference, the prisoner must establish that the

13   defendant knew of and disregarded an excessive risk to inmate health or safety – "the official

14   must both be aware of facts from which the inference could be drawn that a substantial risk of

15   serious harm exists, and he must also draw the inference."  *Id.* at 837.  A prison official may thus

16   be free from liability if he or she did not know of the risk or took reasonable action in response

17   to the risk.  *Id.* at 844.

18   In the context of a slippery floor, a simple claim of negligence is not actionable under the

19   Eighth Amendment, because "[t]he Constitution does not mandate comfortable prisons," and a

20   prisoner's bare complaint about a slippery floor does not state even an arguable claim for cruel

21   and unusual punishment." *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989) (internal

22   quotation omitted).  Where the condition complained of is not objectively inhumane in violation

23   of the Eighth Amendment, the prisoner must show that the condition "exacerbated the inherent

24   dangerousness of already-existing hazards, such that those hazards 'seriously threatened'" the

25   prisoner's safety and security.  *Osolinski v. Kane*, 92 F.3d 934, 938 (9th Cir. 1996) (citing

26   *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985)); *see id.* (finding defendants were

entitled to qualified immunity on plaintiff's Eighth Amendment claim that he was injured by a defective oven door where plaintiff failed to plead that "exacerbating conditions . . .  precluded him from avoiding the faulty oven door or rendered him unable to perceive its defective condition." ).  Thus, in a case where prison officials did not provide a mobility impaired inmate with an accessible shower, despite their *knowledge* that the inmate's use of crutches caused him to fall and injure himself on a slippery bathroom floor, the Court of Appeals for the Ninth Circuit found that a slippery prison floor could give rise to a constitutional claim.  *See Frost v. Agnos*, 152 F.3d 1124, 1129-30 (9th Cir. 1998) (distinguishing *LeMaire v. Maass*, 12 F.3d 1444 (9th Cir. 1993) and *Jackson*, 885 F.2d at 641).

### III.    Undisputed Facts

Unless otherwise noted, the following facts are not disputed.

On June 1, 2009, plaintiff, a prisoner of the California Department of Corrections and Rehabilitation (CDCR), was housed at High Desert State Prison.[2]  Def.'s Mot. for Summ. J. ("Def.'s MSJ"), Stmt. of Undisputed Facts in Supp. Thereof ("DUF") 1; Dckt. No. 1 at 5.[3] Plaintiff was housed in cell 132.  DUF 6; PDF 6.  He used a cane for ambulation because of a medical condition in existence prior to 2009.  DUF 2; PDF 2.

Defendant was one of the officers on duty in the D-1, C Section housing unit of High Desert State Prison on the morning of June 1, 2009.  DUF 3; PDF 3.  Officer Craddock was also on duty that morning.  DUF 4; PDF 4.  That morning, defendant and Officer Craddock observed a puddle of water between cells 128 and 129.  DUF 5; PDF 5.  The puddle was the result of a water chase having leaked into the dayroom floor of C section.  DUF 7; PDF 7.  Defendant and

---

[2] Curiously, plaintiff denies that he was housed at High Desert State Prison on June 1, 2009.  *See* Pl.'s Opp'n to Def.'s MSJ ("Pl.'s Opp'n"), Stmt. of Disputed Facts in Supp. Thereof (Dckt. No. 24 at 8-10) ("PDF") 1.  However, plaintiff's cited evidence does not support any assertion that he was not housed there, and if it did, it would negate his claim which is alleged to have occurred at High Desert State Prison on June 1, 2009.  *See* Dckt. No. 1 at 5.

[3] All references to page numbers in plaintiff's filings are to those assigned via the court's electronic filing system.

1  Officer Craddock observed the puddle to be approximately two feet by two feet in size.  DUF 8.[4]

2  Plaintiff did not observe or complain to prison officials about the puddle prior to June 1, 2009.

3  PDF 9.[5]

4        As the inmates in C Section were released from their cells on the morning of June 1,

5  2009, they each, with the exception of plaintiff, walked around the puddle of water.  DUF 11.[6]

6  Plaintiff was released from his cell, walked into the puddle, and fell.  DUF 12.[7]  Plaintiff did not

7  suffer bruises or broken bones from the fall, but has occasional headaches which he attributes to

8  the fall.  DUF 13; PDF 13.

9        After plaintiff fell, defendant immediately activated the alarm.  DUF 14; PDF 14.

10  Plaintiff was then escorted in a van to the prison's medical care facility where he was treated by

11  medical staff within mere minutes after falling.  DUF 15; PDF 15, 16.  Defendant submitted a

12  Plant Operations Work Request on June 1, 2009 for repair of the leaking chase.  DUF 16; PDF

13  17.

14  ////

15  ////

16

---

17        [4] Plaintiff disputes this statement of fact, but plaintiff's cited evidence – documents he

18  filed with the court on September 29, 2010 (Dckt. No. 17 – entitled "Motion Opposition Answer to Complaint and Demand for Jury Trial") and exhibits filed with his opposition brief, do not

19  undermine or otherwise refute this statement of fact.  *See* PDF 8; Pl's Opp'n at 36 § C.

20        [5] However, plaintiff also declares that he complained about the water chase between cells 128 and 129 and that a caution sign was placed on the floor prior to June 1, 2009.  Pl.'s Opp'n at

21  25 (Pl.'s Decl. in Supp. Thereof, Ex. BB-3).  Plaintiff attaches a letter he apparently wrote to the warden, dated January 3, 2009, complaining that there was no caution sign in front of a puddle of

22  water on the dayroom floor.  *Id.* at 32 (Ex. D1).  Plaintiff does not argue the significance, if any, of this evidence.

23        [6] In his statement of disputed facts, plaintiff claims he neither admits nor denies this fact.

24  PDF 11.  However, in another section of his opposition, plaintiff claims to "deny" this fact.  Pl.'s Opp'n at 36 § G.  However, plaintiff points to no evidence showing a genuine dispute as to the

25  matter.

26        [7] For reasons not apparent to the court, plaintiff also denies this statement of fact.  PDF 12.  However, plaintiff's cited evidence does not support his position.  *See id.*

**IV.    Discussion**

Plaintiff alleges that defendant violated his Eighth Amendment right to be free from cruel and unusual punishment because defendant failed to warn him of the puddle of water in the prison dayroom.  Defendant argues that there is no triable issue of fact that the condition complained of posed a sufficiently serious danger to establish a valid constitutional claim of cruel and unusual punishment.   Defendant also argues there is no evidence that defendants acted with the requisite deliberate indifference.  After careful review of the record, the undersigned finds there is no genuine dispute for trial and defendant is therefore entitled to summary judgment.

Here, there is no dispute as to whether the puddle of water posed a sufficiently serious danger to plaintiff.  The puddle was located several cells away from plaintiff's cell, *see* DUF 5, 6; PDF 5, 6, and there is no indication that plaintiff was required to walk through the puddle in order to exit his cell.  Also undisputed is the fact that all neighboring inmates, with the exception of plaintiff, successfully walked around the puddle.  DUF 11.

Plaintiff submits evidence that he is mobility impaired and requires level terrain and no obstruction in his path of travel.  Pl.'s Opp'n at 20 (Ex. A-1).  However, it does not follow from this evidence that any obstruction in plaintiff's path of travel amounts to a violation of the Eighth Amendment, particularly when, as here, the evidence suggests that the puddle was avoidable.  Indeed, plaintiff does not dispute that the puddle was approximately two feet by two feet, DUF 8, or disagree with Officer Craddock's description of the puddle as "obvious."  Pl.'s Opp'n at 35 § B; *see also id.* at 15.

////

////

////

////

////

8

1    Plaintiff also submits as an exhibit a hand-drawn map of the dayroom.[8] *Id.* at 23.  The

2    exhibit shows plaintiff's cell in relation to the dayroom and the puddle of water.  It also identifies

3    plaintiff's path of travel from his cell to the puddle.  But the drawing does not support an

4    inference that the puddle was unavoidable, difficult to notice or avoid, or otherwise posed an

5    excessive risk to his safety.  *See id.*  There simply is no evidence from which a reasonable trier

6    of fact could conclude that plaintiff could not perceive the puddle of water or avoid it.

7        Finally, and more importantly for purposes of the Eighth Amendment, plaintiff has

8    presented no evidence upon which a reasonable jury could find that defendant knew of a serious

9    risk to plaintiff and was deliberately indifferent to that risk.  At most, plaintiff presents an

10   allegation of negligence.  According to plaintiff, defendant was deliberately indifferent because

11   he was aware of the water puddle, but failed to provide a "caution" sign or otherwise warn

12   plaintiff of the risk posed by the puddle.  Dckt. No. 26 (Pl.'s Opp'n to Def.'s Reply) at 13-14.[9]

13   Plaintiff also submits evidence indicating that he may have slipped in a puddle of water on a

14   previous occasion.  In a letter addressed to the warden dated January 3, 2009, plaintiff references

15   a "slip/fall" and discusses a puddle of water in the dayroom due to water leaking from the

16   chase.[10]  Pl.'s Opp'n at 32 (Ex. D1).  The letter, however, did not inform defendant that plaintiff

17   had previously fallen because the letter was not addressed to defendant.  *See id.*  Furthermore,

18

19       [8] Defendant objects to this exhibit, arguing that it has not been properly authenticated and
     contains inadmissible hearsay.  Dckt. No. 25 (Def.'s Reply) at 2.  At the summary judgment
20   stage, a court does not focus on whether the form of the evidence is admissible.  *Fraser v.*
     *Goodale*, 342 F.3d 1032, 1036-38 (2003).  The issue is whether the contents of the evidence is
21   admissible.  *Id.*  At trial, plaintiff could testify about the layout of the dayroom based on his
     personal knowledge, and use the drawing to refresh his recollection or as demonstrative evidence
22   to help explain his testimony.  Because the contents of the exhibit could be considered at trial,
     the undersigned may properly consider that content on summary judgment.

23

24       [9] Although the court did not authorize plaintiff's filing of a surreply, the court has
     considered it in resolving defendant's motion.

25       [10] In the letter, plaintiff does not specifically state that he slipped in a puddle of water.
     However, it could reasonably be inferred from the letter that plaintiff had fallen after stepping in
26   a puddle of water.  *See* Pl.'s Opp'n at 32 (Ex. D1).

1    there is no evidence that the contents of the letter were shared with defendant or that he had any

2    knowledge that plaintiff had previously slipped in a puddle of water.  Rather, the record shows

3    that defendant observed the puddle of water shortly after 6:00 a.m. on June 1, 2009, and that at

4    approximately 7:00 a.m., plaintiff was released from his cell, walked into the puddle, and fell.

5    Def.'s MSJ, Decl. of Brasher in Supp. Thereof, ¶¶ 2-3; DUF 5, 12; Pl.'s Opp'n at 4 (Ex. A).  On

6    the same day, defendant submitted a request for repair of the leaking chase.  DUF 16; PDF 17.

7    Thus, while the defendant may have been aware of the puddle on the morning of and prior to

8    plaintiff's fall, nothing in the record suggests that defendant knew that the puddle posed a serious

9    risk and was deliberately indifferent to that risk.  *Cf. Frost*, 152 F.3d at 1129 (finding prison

10   guards may have been deliberately indifferent where they were aware that the disabled plaintiff

11   had fallen multiple times, but failed to take any measures to ensure that the plaintiff could

12   shower safely).

13        Plaintiff's evidence merely establishes that defendant became aware of the specific

14   danger to plaintiff posed by the puddle after plaintiff fell.  Upon learning that plaintiff was

15   injured by slipping in the puddle, defendant took remedial measures to ensure that the chase no

16   longer leaked.  Plaintiff presents evidence that might support a tort claim of negligence in

17   connection with a slip and fall on a wet floor.  But he has presented evidence that could convert

18   that slip and fall into an Eight Amendment violation of cruel and unusual punishment.  From the

19   evidence presented, no trier of fact could reasonably find that defendant was aware of and

20   deliberately disregarded a serious risk to plaintiff's health or safety.  Thus, plaintiff has failed to

21   establish a triable issue as to whether defendant acted with deliberate indifference.

22        In light of the above, the undersigned finds there is no genuine dispute of material fact

23   and that defendant's motion for summary judgment should therefore be granted.[11]

24

---

25        [11] Accordingly, the undersigned need not address defendant's alternative arguments for
     summary judgment, and denies as unnecessary plaintiff's request for judicial notice of his
26   administrative appeals.

**V.      Conclusion**

For the reasons explained above, it is RECOMMENDED that:

1.  Defendant Brasher's April 15, 2011 motion for summary judgment be granted;

2.  Plaintiff's April 26, 2011 motion for a pretrial conference be denied;

3.  The Clerk be directed to enter judgment in defendant's favor; and

4.  The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 27, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE